

**ENTERED**
**10/02/2008**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| IFS FINANCIAL CORPORATION § | CASE NO: 02-39553 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| GMAC MORTGAGE LLC § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 08-03047 | |
| § | | |
| BLITZ HOLDINGS CORPORATION, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

### Background

The IFS Financial Corporation ("IFS") case is a jointly administered case comprised of approximately 19 related entities (the "Interamericas Companies").[1] The Interamericas Companies include Interamericas, Ltd., Interamericas Investments, Ltd., Interamericas Holdings, Inc., Interamericas Corporation, Interamericas Financial Holdings, Ltd., Interamericas Financial Holdings Corp., IFS, and other related entities (the "Interamericas Companies").

The Interamericas Companies received money, primarily from Mexican investors, in exchange for future payments to be made from the operation of Interamericas Companies' various businesses.[2] Between 1998 and 2002, the assets of the Interamericas Companies, including IFS, were transferred between various IFS entities and ultimately transferred outside

---

[1] An involuntary petition was filed by Plaintiff GMAC against each of these entities on approximately August 23, 2002. The Court entered an order on January 3, 2005, jointly administering these cases under a single docket.

[2] The Interamericas Companies' businesses included the mortgage, banking, insurance, real estate, custom brokerage and transport forwarding, money exchange, construction/development, and food industries.

the companies. Under the jointly administered case, W. Steve Smith, Trustee, has filed over 100 adversary proceedings to recover allegedly avoidable transfers.

Interamericas Financial Holdings Corp. ("IFHC") was the majority owner of the IFS stock. IFHC executed a $50 million bearer note in favor of GCM Corporation Limited ("GCM"). In early 2000, IFHC defaulted on the note. On May 15, 2000, Blitz Holdings Corporation ("Blitz"), an affiliate of GCM, and IFS executed a Commercial Loan Agreement to settle the default. Under the Agreement, IFS executed a promissory note in the amount of $74,123,588.82 and in favor of Blitz. IFS also wrote a check to GCM in the same amount to pay off its initial obligation. However, the check was canceled. On June 28, 2002, Blitz obtained a judgment on the note in the amount of $64,747,198.48 plus post-judgment interest, costs, and attorneys' fees.

On April 23, 2003, Blitz filed within the IFS bankruptcy case a proof of claim based on the judgment. On August 21, 2006, Blitz filed an amended claim for $88,306,830.94.

On February 14, 2008, GMAC Mortgage, LLC ("GMAC"), an IFS creditor, filed an adversary proceeding objection to Blitz's proof of claim. On May 16, 2008, Blitz filed a Motion for Summary Judgment. On July 14, 2008, the Court held a hearing on the motion.

## Jurisdiction

The Court has jurisdiction of this matter under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary Judgment Standard

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact.

*Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial. At all times, a court views the facts in the light most favorable to the non-moving party. *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006). However, to weigh evidence would result in a credibility determination that is not part of the summary judgment analysis. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). A court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 1998). At this time the non-moving party must respond with sufficient evidence to support the challenged element of its case or present evidence to raise a material issue of fact. *Id.; Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 197.

**Analysis**

GMAC contends that Blitz's proof of claim arose from a fraudulent transfer. Even though a statute of repose has extinguished the fraudulent transfer claim, GMAC contends that the fraudulent transfer allegations may be used defensively to disallow Blitz's claim under § 502(d) of the Bankruptcy Code.

Based on § 502(d)'s plain language and the Fifth Circuit's interpretation of § 502(d), the Court holds that Blitz's proof of claim may not be disallowed under § 502(d). A claim may be disallowed under § 502(d) only if the claim is based on a transfer that the trustee could actually recover under the avoidable transfer provisions. If an affirmative defense or other grounds preclude the trustee from recovering the avoidable transfer, the claim cannot be disallowed under § 502(d). A Texas statute of repose has extinguished any claim the trustee may have had against Blitz.

*i. TUFTA*

GMAC asserts that Blitz's judgment arose from a transfer avoidable under 11 U.S.C. § 544(b)(1). Section 544(b)(1) allows a trustee to avoid transfers that a creditor could avoid under applicable state law.[3] GMAC contends that Blitz's transfer is avoidable under § 24.005(a)(2) of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Section 24.005(a) prohibits fraudulent transfers.[4]

---

[3] Section 544(b)(1) provides: "Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." Paragraph (2) excepts qualified "charitable contributions" from subsection (b)(1). 11 U.S.C. §§ 544(b)(1)–(2).

[4] Section 24.005(a) provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with the actual intent to hinder, delay, or defraud any creditor of the debtor; or

An action under § 24.005(a)(2) must be brought within four years. Section 24.010 operates as a statute of repose and extinguishes a fraudulent transfer cause of action that is not brought within four years of the transfer.[5] *Cadle Co v. Wilson*, 136 S.W.3d 345, 350 (Tex. App.—Austin 2004, no pet.) ("section 24.010 is not simply a limitations provision, but is specifically titled '*Extinguishment* of Cause of Action' . . . Such language indiates that the limitations provision of TUFTA is intended to be strictly construed and that section 24.010 is technically a statute of repose, rather than a statute of limitations."); *Duran v. Henderson*, 71 S.W.3d 833, 838 (Tex. App.—Texarkana 2002, pet. denied) ("We find that Section 24.010 operates as a statute of repose rather than as a procedural statute of limitations.").

"A statute of limitations is a procedural device operating as a defense to limit the remedy available from an existing cause of action; a statute of repose creates a substantive right to be free from liability after a legislatively determined period." *Cadle Co.*, 136 S.W.3d at 350 (citing *Duran*, 71 S.W.3d at 837). "While statutes of limitations operate to bar enforcement of a right, a statute of repose takes away the right altogether." *Id.* Accordingly, a statute of repose prevents the "discovery rule" from allowing a party to assert a stale claim that was discovered during the limitations period. RESTATEMENT (2d) TORTS § 899 (1979) (Statutes of repose "set a designated

---

       (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
       (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
       (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

[5] Section 24.010(a)(2) provides:

    (a) Except as provided by Subsection (b) of this section, a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

       (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred;

5

event for the statutory period to start running and then provide that at the expiration of the period any cause of action is barred regardless of usual reasons for 'tolling' the statue.").

Blitz's alleged fraudulent transfer occurred in 2000. Over four years have passed. Any fraudulent transfer cause of action has been extinguished by § 24.010. GMAC does not contest that a fraudulent transfer action is barred by § 24.010. Nevertheless, GMAC contends that statutes of limitations and repose do not apply when a party asserts a fraudulent transfer claim defensively under § 502(d) of the Bankruptcy Code.[6]

### *ii. 502(d)*

Section 502(d) only applies if a claim is actually "avoidable." Section 502(d) provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property *is recoverable* under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer *avoidable* under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee *is liable* under section 522(i), 542, 543, 55,0, or 553 of this title.

11 U.S.C. § 502(d) (emphasis added).

The Court must give effect to a statute's plain language. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Section 502(d)'s plain language requires disallowance only of claims that are "recoverable" or "avoidable" under the relevant turn-over and avoidance provisions. *In re Mkg. Assocs. of Am., Inc.*, 122 B.R. 367 (Bankr. E.D. Mo. 1991). The last clause of § 502(d) emphasises this interpretation by describing transferees subject to the provision as creditors who are "liable." Section 502(d) makes no exceptions for claims that would be "recoverable" or "avoidable" if the court ignores an affirmative defense that

---

[6] In prior litigation, Blitz and the Trustee entered a settlement that provided: "Trustee does not contest as an allowed unsecured claim of Blitz the balance remaining under the Final Judgment." During the July 14 hearing on Blitz's Motion for Summary Judgment, Blitz admitted that the settlement provision did not preclude the Trustee from asserting a fraudulent transfer cause of action. Accordingly, the Court does not consider the effect of the settlement provision.

precludes the trustee from recovering or avoiding a transfer that gave rise to the claim. Blitz's alleged fraudulent transfer is not recoverable or avoidable. TUFTA's statute of repose has extinguished any claim the trustee may have held under § 544 of the Bankruptcy Code. Accordingly, the Court cannot disallow Blitz's claim.

Interpreting § 502(d) according to its plain language is consistent with the Congressional purpose behind the statute. As the Fifth Circuit has held, § 502(d) was intended to serve as a mechanism to enforce orders and judgments based on turn-over and avoidance complaints. *Campbell v. U.S. (In re Davis)*, 889 F.2d 658, 661 (5th Cir. 1989) ("The legislative history and policy behind Section 502(d) illustrates that the section is intended to have the coercive effect of insuring compliance with judicial orders."); *Holloway v. Internal Revenue Serv. (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003). Section 502(d) "is designed to be triggered after a creditor has been afforded a reasonable time to turn over amounts adjudicated to belong to the bankruptcy estate." *Id*. at 662. The statute's "language indicates section 502(d) should be used to disallow a claim after the entity is first adjudged liable; otherwise, the court could not determine if the exception applies." *In re Odom Antennas, Inc.,* 340 F.3d at 708.

GMAC notes that courts have disallowed claims under § 502(d) even though the transfers giving rise to the claims could not be avoided under any of the avoidable transfer provisions because of a time bar. *El Paso City of Tex. v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1168 (9th Cir. 2000) (holding that the "limitations period in § 546 does not apply to § 502(d)"); *Comm. of Unsecured Creditors v. Commodity Creditor Corp. (In re KF Dairies, Inc.)*, 143 B.R. 734, 737 (B.A.P. 9th Cir. 1992) ("Application of the time-bar to objections based on section 502(d) would undercut the statutory language, the purpose of the bankruptcy code, and the general rule that statutory time-bars are inapplicable to matters of defense, where no

affirmative relief is sought."); *In re Discount Family Boats of Tex.*, 233 B.R. 365, 368 (Bankr. E.D. Tex. 1999); *In re Mid Atl. Fund, Inc.*, 60 B.R. 604, 610 (Bankr. S.D. N.Y. 1986).[7]

These Courts largely rely on the general equitable distribution goal of bankruptcy. *In re KF Dairies, Inc*., 143 B.R. at 737. (holding that a time-bar should not preclude use of § 502(d) to disallow a claim "[b]ecause the bankruptcy code is concerned chiefly with equality of distribution."); *U.S. Lines Inc. v. U.S. (In re McLean Indus., Inc.)*, 196 B.R. 670, 677 (S.D. N.Y. 1996) ("The dispositive statutory language is, moreover, perfectly consonant with one of the chief policy concerns of the Code—namely, equitable distribution of the estate among creditors."). The Courts reason that it would be inequitable to allow a creditor, who obtained a claim through inequitable conduct that gives rise to an avoidance action, to collect from the estate to the detriment of innocent creditors. *In re KF Dairies Inc.*, 143 B.R. at 737.

Nothing in the statute suggests § 502(d) was intended to allow courts to, in effect, equitably subordinate claims based on transfers that would be avoidable if not for the application of an affirmative defense. In fact, Congress created a separate provision to effectuate the equitable distribution goal. Section 510 allows courts to equitably subordinate valid claims when circumstances warrant. 11 U.S.C. § 510(c)(1) ("the court may—under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . .").

The Courts also relied on the "ancient common law doctrine concerning the defensive use of time-barred claims." *In re KF Dairies, Inc.*, 143 B.R. at 737. However, common-law doctrines are trumped by plain statutory language. The "ancient common law doctrine concerning the

---

[7] Courts reached the same conclusions under § 57(g) of the Bankruptcy Act of 1898, the precursor to § 502(d). *In re Cushman Bakery*, 526 F.2d 23 (1st Cir. 1975) ("the only time limitations on a trustee's ability to present objections to the allowance of a claim are those flowing from the equitable doctrine of laches); *In re Meredosia Harbor & Fleeting Serv., Inc.*, 545 F.2d 583 (7th Cir. 1976).

defensive use of time-barred claims" has no application when § 502(d)'s plain language allows disallowance only when a claimant is, in fact, liable. Section 502(d) operates to enforce Court orders. Section 502(d) does not implement a common law doctrine.

This Court is bound by the Fifth Circuit. The Fifth Circuit holds that § 502(d) operates to enforce orders and judgments, not to disallow claims based on theoretically avoidable transfers when no liability has been established and when no liability can be established. The applicable statute of repose precludes the trustee from recovering on a fraudulent transfer claim against Blitz. Accordingly, Blitz's claim cannot be disallowed under § 502(d) because Blitz is not a transferee of a transfer that is avoidable under § 544.

### *iii. Consideration*

GMAC also contends that Blitz's claim should be disallowed for lack of consideration.

GMAC raises the no consideration argument for the first time in GMAC's supplemental briefing submitted after the hearing on Blitz's Summary Judgment Motion. GMAC's complaint asserted § 24.005(a)(2) of TUFTA as the sole basis for disallowing Blitz's claim. An element of a § 24.005(a)(2) fraudulent transfer is that the transferor received less than reasonably equivalent value for the disputed transfer. GMAC's complaint stated an absence of consideration only in relation to the reasonably equivalent value element of § 24.005(a)(2).

GMAC has introduced no evidence of an absence of consideration.

Moreover, consideration is given when a promissory note is executed on account of antecedent debt. TEX. BUS. & COM. CODE ANN. § 3.303(a)(3) (West 2000); *Base Mktg, Inc. v. Base Seal Intern., Inc.*, 2004 WL 334861 at *4 (Tex. App.—Austin, Feb. 12, 2004, no pet.); *Cortez v. Nat'l Bank of Commerce*, 578 S.W.2d 476, 478 (Tex. App.—Corpus Christi 1979, write ref'd n.r.e). Blitz's proof of claim arises from the 2001 Commercial Loan Agreement

9

between Blitz and IFS. The Commercial Loan Agreement restructured an antecedent debt owed by Blitz's affiliate.

## Conclusion

For the reasons set forth above, the Court grants Blitz's Motion for Summary Judgment. A separate judgment will be issued.

Signed at Houston, Texas, on October 2, 2008.

MARVIN ISGUR
United States Bankruptcy Judge